UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHAWN L. BURNS,

        Plaintiff,

v.                                                                  Case No.: 6:22-cv-1599-WWB-RMN

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
TRANSPORTATION SECURITY
ADMINISTRATION,

        Defendant.
                                       /

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 35), Plaintiff's Reply in Opposition (Doc. 36), and Defendant's Reply (Doc. 37). For the reasons set forth below, Defendant's Motion will be granted.

**I.   BACKGROUND**

Plaintiff, Shawn Burns, is a Transportation Security Administration ("**TSA**") agent at the Orlando International Airport ("**MCO**"). (Doc. 35-2 at 19:17–19, 27:20–28:8). Plaintiff began working for the TSA in 2006 and was transferred to MCO as a Transportation Security Inspector at the H-band level in 2012. (*Id.* at 27:20–22, 53:21–54:1). When Plaintiff arrived at MCO, Parker Bellaire, Assistant Federal Security Director for Inspections, was his second-line supervisor and reviewed Plaintiff's performance ratings. (Doc. 36-2 at 3). Soon after he started at MCO, Plaintiff participated in Merit System Protection Board ("**MSPB**") proceedings wherein he alleged that Bellaire violated TSA rules by improperly approving a security plan for a private firm and hiring Angel

Pagan as an I-band level agent without using the competitive process. (*Id.* at 4–5). The MSPB concluded that Plaintiff made a protected disclosure based upon these agency rule violations and that Plaintiff was retaliated against by being issued a Notice of Proposed Removal and given a lowered performance appraisal in 2015. (*Id.* at 43–44).

In 2016, Plaintiff filed his first complaint with the Equal Employment Opportunity Commission ("**EEOC**") ("**2016 EEOC Complaint**") on the basis of age discrimination and retaliation. (Doc. 35-3 at 2–3, Doc. 35-4 at 2–6). Therein, Plaintiff alleged that he was kept from attending meetings, denied training, and not given raises that were given to other similarly situated employees. (Doc. 35-2 at 76:3–16; Doc. 35-4 at 3–4). Plaintiff included Bellaire as a responsible management official for the alleged discrimination. (Doc. 35-2 at 64:10–65:7; Doc. 35-4 at 3). The 2016 EEOC Complaint remained pending until April 4, 2018, when the Department of Homeland Security Office for Civil Rights and Civil Liberties ("**CRCL**") determined that there was no evidence to support Plaintiff's claims. (Doc. 35-5 at 13).

Plaintiff interviewed for a promotion to the Aviation TSI I-band position in 2017 (the "**2017 I-band position**"). (Doc. 35-2 at 84:1–11, 85:11–14; Doc. 35-7 at 2–10). However, the 2017 I-band position did not get filled because of a hiring freeze and the position was ultimately cancelled. (Doc. 35-9 at 3). Still, Plaintiff received a performance appraisal of "4.41" out of "5" for the 2017 performance year, which was approved by Bellaire as the reviewing official. (Doc. 35-6 at 2). Plaintiff interviewed again for an I-band position the following year (the "**2018 I-band position**"). (Doc. 35-2 at 101:13–20; Doc. 35-10 at 3; Doc. 35-12 at 2). Plaintiff did not receive a top interview score and was not given the

promotion.  (Doc. 35-13 at 2).  Plaintiff was notified that he was not selected for the 2018 I-band position on May 29, 2018.  (Doc. 35-2 at 113:11–18).

Meanwhile, Plaintiff had a falling out with his co-worker Moira Lozada.  (*Id.* at 125:18–126:17; Doc. 35-18 at 4).  Plaintiff and Lozada began having arguments at work and Lozada reported Plaintiff to management for using unprofessional language in March 2018.  (Doc. 35-16 at 3–10).  The conflict between Plaintiff and Lozada culminated in April 2018 when Plaintiff printed a message (the "**Note**") on the shared government printer in the TSA office that said "[s]ometimes, the person you'd take a bullet for ends up being the one behind the gun."  (Doc. 35-17 at 2).  Lozada found the Note and reported it to management, claiming that Plaintiff created it to harass her.  (Doc. 35-18 at 3–5).

The next day, Bellaire ordered an all-hands meeting to determine who printed the Note.  (Doc. 35-19 at 3).  Plaintiff did not admit to printing the Note during the meeting. (Doc. 35-2 at 153:4–13; Doc. 35-20 at 6).  Special Agent Robert Flaherty then began an investigation into Lozada's harassment allegations and Plaintiff admitted he printed the Note at an investigatory interview a few weeks later.  (Doc. 35-2 at 156:1–9; Doc. 35-20 at 5–6; Doc. 35-21 at 3).  In light of Plaintiff's admission, Deputy Federal Security Director Steve Hanson issued Plaintiff a "No Contact Order" with regard to Lozada.  (Doc. 35-22 at 2).  Some weeks later, Flaherty's investigation concluded that Plaintiff violated the TSA Code of Conduct based on his conduct toward Lozada and his lack of candor to the investigation.  (Doc. 35-20 at 6).  Transportation Security Manager Franklin E. Lott, Sr. then issued Plaintiff a Notice of Proposed Fourteen (14) Calendar Day Suspension arising from this episode.  (Doc. 35-23 at 2–7).  On September 12, 2018, Hanson ordered Plaintiff suspended for fourteen days pursuant to Lott's recommendation.  (Doc. 35-24 at 2–10).

3

Pagan, who was promoted to a Supervisory Transportation Security Inspector, became Plaintiff's immediate supervisor and ratings official for the 2018 performance period. (Doc. 35-26 at 2). Initially, Pagan planned to give Plaintiff an overall rating of "3" in "Decision Making" and "Communication" and did in fact give Plaintiff ratings on the "higher end." (*Id.* at 3–4). Bellaire declined to approve Pagan's recommended appraisal of Plaintiff because he believed it was too high in light of Plaintiff's suspension. (*Id.* at 3). Pagan then revised his appraisal to give Plaintiff a rating of "unacceptable" with a numerical rating of "1" in "Decision Making" and "Communication.". (*Id.* at 3–4). Under TSA's Employee Performance Management Program, an employee that receives a "1" in any performance category is given a rating of "unacceptable" regardless of their scores in other categories. (*Id.* at 3). Plaintiff received his 2018 performance appraisal with the overall rating of "unacceptable" on November 7, 2018 (the "**2018 Appraisal**"). (*Id.* at 4, 14).

Plaintiff contacted an EEOC counselor on October 9, 2018. (Doc. 35-2 at 60:15–61:12). The 2018 Appraisal was later revised to a "3.93" on February 19, 2019. (Doc. 35-27 at 2). Nevertheless, Plaintiff filed a formal administrative complaint on March 21, 2019, alleging that he was retaliated against for his participation in the 2016 EEOC proceedings (the "**2019 EEOC Complaint**"). (Doc. 35-29 at 2–3). The TSA EEO Management Branch issued a Corrected Notice of Acceptance and grouped the issues raised by Plaintiff into the following seven discrete claims: (1) Pagan issuing Plaintiff a lower than expected performance rating in November 2018; (2) Hanson not selecting Plaintiff for the 2018 I-band position in October 2018; (3) Hanson issuing Plaintiff a Decision Notice on a Proposed 14-day suspension in September 2018; (4) Hanson

issuing Plaintiff a "No Contact Order" in May 2018; (5) Hanson not selecting Plaintiff to the 2018 I-band position in April 2018[1]; (6) Plaintiff being humiliated at the all-hands meeting in April 2018; and (7) Plaintiff not being selected for the 2017 I-band position in April 2017.  (Doc. 35-30 at 2–4).

The EEOC began investigating Plaintiff's claims on May 10, 2019, and an administrative judge determined that Plaintiff failed to prove his claims in May 2022.  (Doc. 35-40 at 2; Doc. 35-38 at 2, 6).  The CRCL subsequently affirmed the administrative judge's decision.  (Doc. 35-42 at 2, 4).  As a result, Plaintiff brings claims against Defendant for violations of the Rehabilitation Act of 1973 ("**RA**"), 29 U.S.C. § 701 *et seq.*, the Age Discrimination in Employment Act of 1967 ("**ADEA**"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("**Title VII**"), 42 U.S.C. § 2000e *et seq.*  (*See generally* Doc. 30).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it may "affect the outcome of the suit under the governing law."  *Id.*  "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of

---

[1] Claims 2 and 5 both pertain to Plaintiff's non-selection for the same 2018 I-band position, which occurred in April 2018, not October 2018.  (Doc. 35-2 at 101:13–103:5, 139:2–10).  Accordingly, the Court will disregard the reference to an October 2018 I-band position in the TSA EEO Management Branch memorandum.  (Doc. 35-30 at 2).

5

material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III.   DISCUSSION

Defendant argues that Plaintiff's claims fail on procedural and substantive grounds. On procedural grounds, Defendant contends that Plaintiff failed to exhaust his administrative remedies with regard to his age and disability discrimination claims and that many of the alleged adverse employment actions taken against him are time-barred. On substantive grounds, Defendant argues that Plaintiff cannot establish his disability claims under the RA, his age discrimination claim under the ADEA,[2] or his retaliation claim under Title VII.

---

[2] Plaintiff's allegations of age discrimination do not expressly mention the ADEA. However, the ADEA is the primary statute under which Plaintiff can allege unlawful age

A. **Administrative Prerequisites**

A federal employee who seeks redress for an adverse employment action through the agency's EEOC office must undergo a two-step process to exhaust administrative remedies: (1) informal counseling with an EEOC counselor within forty-five days of the challenged employment act, and (2) the filing of a formal complaint with the agency or department within fifteen days after the EEOC counselor has issued a notice of final interview. 29 C.F.R. §§ 1614.105, 1614.106; *see also Hendrix v. Snow*, 170 F. App'x 68, 76 (11th Cir. 2006). "The purpose of this exhaustion requirement is that the [agency] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quotation omitted).

After the administrative prerequisites have been satisfied, the plaintiff may bring a civil action in federal court based on the EEOC complaint as well as claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (quotation omitted). Indeed, "the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge." *Gregory*, 355 F.3d at 1280 (citation omitted). But allegations involving new acts of discrimination are inappropriate. *See Wu*, 863 F.2d at 1547. A plaintiff's discrimination claims in any subsequent lawsuit will be "limited by the scope of the EEOC investigation that can reasonably be expected to grow

---

discrimination. *See* 29 U.S.C. § 633a(c). Thus, the Court should construe Count II as arising under the ADEA.

7

out of the charge of discrimination." *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014). As a general proposition, courts "do not strictly interpret the scope of an EEOC charge." *Gill v. Bank of Am. Corp.*, No. 2:15-cv-319-FtM, 2015 WL 4349935, at *3 (M.D. Fla. July 14, 2015).

Plaintiff brings claims for age and disability discrimination pursuant to the RA and the ADEA as well as retaliation under Title VII, but the 2019 EEOC Complaint asserts only retaliation—not age or disability discrimination—as the basis of the complaint. (Doc. 35-11 at 99:5–100:10; Doc. 35-29 at 3). Defendant argues that Plaintiff's failure to include age and disability discrimination in the 2019 EEOC Complaint constitutes a failure to exhaust his administrative remedies. As Defendant notes, neither the TSA EEOC office's list of accepted claims nor the subsequent decisions on those claims refer to Plaintiff's age or alleged disability. (Doc. 35-30 at 2–3; Doc. 35-38 at 3; Doc. 35-42 at 3–4).

Plaintiff argues that he administratively exhausted his claims because the 2016 EEOC Complaint included age discrimination as a reason for the actions taken against him. (*See* Doc. 35-3 at 3). Setting aside that the 2016 EEOC Complaint omits any allegation of disability discrimination, Plaintiff's argument fails for several reasons. First, Plaintiff did not file a lawsuit based on the 2016 EEOC Complaint and the deadline to do so has long passed. (Doc. 35-11 at 78:25–79:13). To the extent Plaintiff seeks to characterize this lawsuit as predicated on the 2016 EEOC Complaint, all of Plaintiff's claims would then be time-barred. The final agency decision on the 2016 EEOC Complaint was issued in 2018 and Plaintiff did not file suit until 2022, which, of course, exceeds the ninety-day limitations period. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a).

After reviewing the 2019 EEOC Complaint and Charge in the light most favorable to Plaintiff, the Court finds that the age and disability discrimination claims exceed the scope of the 2019 EEOC Complaint. Because Plaintiff only alleged retaliation, the scope of the EEOC investigation did not extend to investigate age or disability discrimination. The Eleventh Circuit has rejected attempts by plaintiffs to add unrelated discrimination claims in federal court after filing an administrative charge on a different basis. *See Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 600 (11th Cir. 2008) (holding that the plaintiff's race and national origin discrimination claims "could not reasonably be expected to grow out of the EEOC disability charge" (quotation omitted)). There are no factual allegations in the 2019 EEOC Complaint that support an age or disability discrimination claim or that could have reasonably prompted an investigation into such claims. *See Gill*, 2015 WL 4349935, at *3. Accordingly, Counts I and II will be dismissed for failure to exhaust administrative remedies. Having determined that Plaintiff failed to administratively exhaust his age and disability discrimination claims, Defendant's additional arguments against those claims will not be addressed at this juncture.

Title VII also requires employees "to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act." *Shriver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing 29 C.F.R. § 1614.105(a)(1)). Defendant argues that each adverse employment action that occurred before August 25, 2018, is time-barred because Plaintiff did not initiate contact with an EEOC counselor until October 9, 2018. This would preclude claims 2, 4, 5, 6, and 7 as listed in the Corrected Notice of Acceptance. In response, Plaintiff

9

argues that the continuing violation doctrine applies to his claims of ongoing harassment, discrimination, and retaliation.

"The continuing violation doctrine offers an exception to th[e] limitation period and allows a plaintiff to sue on otherwise time-barred claims where at least one violation occurred within the period." *Wolf v. MWH Constructors, Inc.*, 34 F. Supp. 3d 1213, 1222 (M.D. Fla. 2014). In determining whether a discriminatory employment practice constitutes a continuing violation, courts "must distinguish between the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *Equal Emp. Opportunity Comm'n v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (quotation omitted). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine[.]" *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006) (quotation omitted). This is to ensure that "[a] plaintiff may not circumvent the limitations period merely by labeling an act a continuing violation." *Wolf*, 34 F. Supp. 3d at 1222 (quotation omitted).

Plaintiff's attempt to recast the alleged discriminatory acts as continuing violations is unpersuasive. Plaintiff does not allege the "minimum assertion that Defendant engaged in a pattern of discrimination or had an employment practice that perpetuated the alleged wrong." *Id.* at 1223. Nor does Plaintiff proceed under a claim for hostile work environment, and such a claim cannot be added at this stage of the case. *See Burke v. U.S. Postal Serv.*, No. 5:20cv274, 2022 WL 3092217, at *5 (N.D. Fla. July 5, 2022); *see also Varazo v. Keiser Corp.*, 754 F. App'x 918, 919 (11th Cir. 2018) ("It is well settled that

'[a] plaintiff may not amend [her] complaint through argument in a brief opposing summary judgment.'" (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))). Thus, there is no reasonable dispute that Plaintiff's Title VII claims with respect to Hanson not selecting Plaintiff for the 2018 I-band position in April 2018, the May 2018 No Contact Order, Plaintiff being humiliated at the all-hands meeting in April 2018, and Plaintiff not being selected for the 2017 I-band position in April 2017, are time-barred and summary judgment will be granted in favor of Defendant as to such claims.

> **B.** **Plaintiff's Title VII Retaliation Claim**

Plaintiff's remaining viable claim is for retaliation under Title VII based on Pagan's lower than expected performance rating and Hanson issuing Plaintiff a Decision Notice on a proposed fourteen-day suspension. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."). To state a prima facie claim for retaliation, Plaintiff must establish that "(1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009).

There is no question that Plaintiff engaged in statutorily protected activity by filing the 2016 EEOC Complaint. *See, e.g.*, *Rives v. LaHood*, 605 F. App'x 815, 819 (11th Cir. 2015) (holding that the plaintiff "engaged in protected activity when he filed the [EEOC] complaint"). Plaintiff, however, has failed to establish the remaining elements.

When considering causation, courts "construe the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)

11

(quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). Causation is often shown by demonstrating "close temporal proximity between the statutorily protected activity and the materially adverse action." *Johnson v. Fam. Prac. & Inj. Ctr., Inc.*, 437 F. Supp. 3d 1108, 1121 (M.D. Fla. 2020) (quotation omitted). However, the "temporal proximity must be very close" to provide sufficient evidence of causality in the absence of other evidence. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quotation omitted). Indeed, "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all." *Id.* at 274; *see also Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 990 (11th Cir. 2020) (holding that a three-month gap is too large to infer causation); *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) (same); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (same).

Here, there is no dispute that Plaintiff made the complaint in early 2016, but the only remaining adverse actions in this case occurred in April and September 2018, two years after the filing. In an attempt to bridge this temporal gap, Plaintiff attempts to characterize the 2016 EEOC Complaint as "ongoing" until it was formally resolved in April 2018. (Doc. 36 at 7). Courts have rejected the notion that the mere pendency of a complaint amounts to a continual statutorily protected activity. *See Gray v. City of Montgomery*, 756 F. Supp. 2d 1339, 1350–51 (M.D. Ala. 2010) (finding that the plaintiff "failed to explain why, for an adverse action that occurred perhaps years after a lawsuit or complaint was filed, the inference of discrimination should apply just because the lawsuit was still pending"). Plaintiff has failed to offer any contrary legal authority in support of his position or to direct the Court to any specific facts in this case that would make it distinguishable. Accordingly, the Court is not persuaded that the temporal gap

between the resolution of his complaint and the adverse action is the proper consideration in this case. Plaintiff has not proffered any other evidence that the alleged retaliatory actors acted against him because of the pendency of the 2016 EEOC Complaint. Indeed, Plaintiff has not demonstrated that the alleged retaliatory actors were even aware that the 2016 EEOC Complaint was still pending at or near the time they acted.

Plaintiff has failed to proffer additional evidence to indicate causality despite the large temporal gap between the 2016 EEOC Complaint and the issuance of the fourteen day suspension. Plaintiff posits that the TSA's retaliatory motive is evident because Hanson issued the suspension and was also the deciding official on the appeal of the suspension. But Plaintiff has set forth no authority that suggests that he was entitled to a different process, nor has he explained how Hanson's involvement in these proceedings constitutes evidence of a retaliatory motive by the TSA. Plaintiff speculates that Bellaire directed Lott and Hanson to issue the suspension out of spite for Plaintiff's prior participation in EEOC and MSPB proceedings. (Doc. 35-11 at 152:2–154:2). However, there is no evidence to support this claim. "Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." *Atakora v. Franklin*, 601 F. App'x 764, 766 (11th Cir. 2015) (quotation omitted). Plaintiff can point to nothing in the record that suggests that Bellaire was involved in the decision to suspend Plaintiff, that the investigation of Lozada's harassment allegations was pretextual, or that the suspension was otherwise in retaliation for his participation in any statutorily protected activity. Therefore, summary judgment is warranted on this basis.

With regard to the 2018 Appraisal, Plaintiff argues that a causal link exists because Bellaire, who was found to have retaliated against Plaintiff in the MSPB proceedings, instructed Pagan to reconsider Plaintiff's performance rating for the 2018 Appraisal. Setting aside the issue of whether Bellaire's involvement can demonstrate causality sufficient to survive summary judgment, Plaintiff still fails to establish a prima facie case of retaliation because the 2018 Appraisal does not constitute an adverse employment action.

"There is no bright line test for establishing when alleged discrimination rises to the level of an adverse employment action." *Kintz v. United Parcel Serv., Inc.*, 766 F. Supp. 2d 1245, 1258–59 (M.D. Ala. 2011) (citing *Davis v. Town of Lake Park*, 245 F.3d 1232 (11th Cir. 2001)). But courts have established that an adverse employment action exists when "a decision of the employer impacted the terms, conditions, or privileges of [his] job in a real and demonstrable way." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920–21 (11th Cir. 2018) (quotation omitted). Here, the record shows that Plaintiff's 2018 Appraisal did not affect the terms, conditions, or privileges of his job in any demonstrable way. Plaintiff argues that raises, bonuses, and promotions are based on appraisal scores. However, the record shows that bonuses are not awarded as a matter of course based on appraisal scores, and Plaintiff has not proffered any evidence that he would have received a bonus but for the 2018 Appraisal. (Doc. 35-26 at 4; Doc. 35-35 at 9–10). Plaintiff has not otherwise shown how his employment conditions were negatively affected by the 2018 Appraisal. Plaintiff's speculation that TSA subsequently revised his 2018 Appraisal because they knew the original 2018 Appraisal was retaliatory is unavailing because, if anything, the subsequent revisal only further demonstrates that the

14

2018 Appraisal had no effect on Plaintiff's employment conditions. Moreover, Plaintiff's assertion that he was not awarded the 2018 I-band position because of the 2018 Appraisal is patently false, as the 2018 I-Band position was filled in May 2018, but Plaintiff's 2018 Appraisal was not issued until November 2018. (*See* Doc. 35-15 at 2; Doc. 35-26 at 14). Therefore, because Plaintiff has failed to present evidence of a prima facie case for retaliation based on the remaining actions, the Court will also grant summary judgment in favor of Defendant as to Plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 35) is **GRANTED**.
2. The Clerk is directed to enter judgment in favor of Defendant, and against Plaintiff, on each of Plaintiff's claims providing that Plaintiff shall take nothing on his claims. Thereafter, the Clerk shall close this case.
3. All other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Orlando, Florida on November 15, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record